62 So.2d 696 (1952)
OVERMAN et al.
v.
STATE BOARD OF CONTROL et al. (two cases).
WHITLOCK
v.
STATE BOARD OF CONTROL et al.
Supreme Court of Florida, en Banc.
December 2, 1952.
Rehearing Denied January 29, 1953.
*698 Yonge, Beggs & Lane and E. Dixie Beggs, Pensacola, for petitioner.
Richard W. Ervin, Atty. Gen., John A. Madigan, Jr., Asst. Atty. Gen., Jerry Hussey, Special Asst. Atty. Gen., R.B. Gautier, Jr., Robert H. Anderson, Miami, LeRoy Collins, Ben C. Willis, Tallahassee, and G.L. Reeves, Tampa, for respondents.
TERRELL, Justice.
The State Board of Control instituted this suit by bill of complaint, praying for an interpretation of Chapter 26763, Acts of 1951, F.S.A. §§ 242.62 and note, 242.63, authorizing the payment of $3000 per year for each Florida student enrolled in the first approved and Accredited Medical School established in the State. The bill also prayed that the Governor and the Comptroller be directed to draw and countersign the necessary warrants on the State Treasury to transfer said funds to Miami University, it being the first medical school established in the state in contemplation of the act.
The Governor and the Comptroller answered the bill, admitting the enactment of Chapter 26763, that it authorized a subsidy of $3000 for each Florida Student enrolled in the first accredited medical school established in the state, but they disavow any knowledge of the qualification of Miami University to meet the requirements of the act or any effort on its part to do so. An amendment to the answer admitted that the Governor and the Comptroller were in doubt as to their authority to draw and countersign warrants for payment of funds appropriated by the act and stated that they would not do so until directed by a court of competent jurisdiction.
After the answer of the Governor and Comptroller was filed, appellants as citizens and taxpayers, were permitted to intervene and file an answer and a motion to dismiss. W.E. Whitlock was also permitted to intervene as a citizen, taxpayer and member of the Legislature. He moved to dismiss the bill. The chancellor overruled the motions to dismiss and this appeal by certiorari was prosecuted. June 26, 1952, a summary decree was entered by the Chancellor from which an appeal by certiorari was also entered. The record in the latter case was duly filed and the two cases have been consolidated for consideration. Both cases present the same questions and will be disposed of in this opinion.
The first question with which we are confronted is whether or not this is a case in which Chapter 87, F.S.A. authorizing declaratory decrees may be invoked.
In Sheldon v. Powell, 99 Fla. 782, 128 So. 258 and Ready v. Safeway Rock Company, 157 Fla. 27, 24 So.2d 808, this Court defined the purpose and scope of the declaratory judgments statute. In Alsop v. Pierce, 155 Fla. 185, 19 So.2d 799; Watson v. Centro Espanol De Tampa, 158 Fla. 796, 30 So.2d 288; Caldwell v. North, 157 Fla. 52, 24 So.2d 806; Rosenhouse v. 1950 Spring Term Grand Jury, Fla., 56 So.2d 445 and others, we have approved fact situations that authorize application of the declaratory judgments statute. A reading of these cases discloses (1) that the Declaratory Judgments act may be invoked in any case where technical or social advances have obscured or placed in doubt one's rights, immunities, status or privileges. (2) It should not be invoked to foster frivolous or useless litigation, to answer abstract questions, to satisfy idle curiosity, to authorize a fishing expedition or to promulgate judgments serving no useful purpose. It is therefore certain that the act is prospective, that it is never closed and may be invoked in a bona fide case if one's rights, immunities, status or privileges are shown to be in doubt or are obscured.
Is the right, immunity, status or authority of the Governor and the Comptroller placed in doubt by Chapter 26763? The act makes an appropriation of $225,000 to effectuate its purpose. Under the constitution these funds cannot be paid out except on warrant drawn by the Comptroller *699 and countersigned by the Governor. Section 24, Article IV, State Constitution, F.S.A. In their amended answer the Governor and the Comptroller say they are in doubt as to their authority to draw and countersign warrants for the disbursement of these funds. Disbursing such an amount imposes a grave duty on the Governor and the Comptroller. We think this fact alone is sufficient to invoke the declaratory judgments act. In addition to this reason, the Board of Control, a very important arm of the State government, is clothed with a most important function under the act and is importuning us to construe it for their guidance. I think there is ample showing for declaratory judgment.
Counsel are not in agreement as to statement of the second question. The crucial point presented by it may be stated as follows: When does the $3000 appropriation per year for each student accepted and enrolled in the first approved and accredited medical school established in the state, become available?
The answer to this question turns on the interpretation of the Act. Appellants contend that the act is a model of clarity, that a reading of it reveals no ambiguity, that it shows on its face that the appropriation will not be available during the present biennium because the first approved and accredited Medical School will require four years to become a reality, in that it requires a four year curriculum with a class in each year. Hence it is contended that the bill of complaint is prematurely brought. Fine v. Moran, 74 Fla. 417, 77 So. 533 and similar cases are relied on to support this contention.
We do not think the point resolves itself so easily. The title of Chapter 26763 states its purpose to be:
"An Act Relating to Medical School Education in the State of Florida; Authorizing the Board of Control to Pay to the First Approved and Accredited Medical School Established in Florida the Sum of Three Thousand Dollars per Year for Each Qualified Florida Student Enrolled; Defining the Necessary Qualifications of a Medical School and Medical Students to Receive Benefits; Regulating the Expenditure of Such Funds by Said School; Limiting the Number of Students from Each County and Providing Appropriations to the Board of Control."
The preamble points out (1) that notwithstanding a growing demand for medical education, there is no approved and accredited medical school in the State; (2) that the Legislature and People of the State desire the establishment of a state medical school; (3) that since the enactment of Chapter 24124, Acts of 1947, the state has been contributing to the support of Florida students enrolled in accredited medical schools outside the state; (4) it is the purpose of the state to encourage the establishment of an accredited medical school in this state to educate Florida men and women in medicine.
Section 1 of the act declares the purpose of the state to pay $3000.00 per year, per student enrolled in the "first accredited and approved medical school established in the State of Florida" and section 2 imposes the following requirements for a medical school to be entitled to the appropriation.
"(A) Shall be primarily operated and established to offer, afford and render a medical education to residents of the State of Florida qualifying for admission to said institution:
"(B) Shall at no time have more than ten per cent (10%) of its total enrollment of students who are residents of states or counties other than the State of Florida;
"(C) Shall be operated by a municipality or county of this state, or by a non-profit organization heretofore or hereafter established exclusively for educational purposes;
"(D) Upon the formation and establishment of an accredited medical school, said school shall, through its duly constituted officers, transmit and file with the Board of Control of this state documentary proof evidencing the facts such institution has been certified and approved by the Council on Medical Education and Hospitals of *700 the American Medical Association; and has adequately met the requirements of said Council in regard to its administrative facilities, administrative plant, clinical facilities, curriculum and all other such requirements as may be necessary to qualify with said Council as a recognized approved and accredited medical school;
"(E) Shall certify to the Board of Control of this State sixty (60) days prior to the commencement of any school year the name, address and educational history of each student approved and accepted for enrollment in said institution for the ensuing school year."
Section 3 provides that the Board of Control shall within 60 days of receipt of the enrollment of said medical school pay it the amount appropriated for each student accepted and approved for enrollment, provided said medical student and his or her parents or legal guardian have been bona fide residents of the State of Florida for seven years prior to the date of admittance and enrollment as a medical student. Repayment of the funds to the state is required in event the student resigns or is dismissed. Provision is made for ensuring the enrollment of medical students from all parts of the state, to safeguard the expenditure of the fund and lastly an appropriation of $225,000 from the General Revenue Fund to carry out "the provisions of this Act during the period from July 1, 1951, through June 30, 1953."
When Chapter 26763 was enacted, the University of Miami determined to meet its requirements and secure its benefits. With this end in view Dr. H.B. Weiskotten, Chairman of the Council on Medical Education and Hospitals of the American Medical Association and Dr. Joseph G. Hinsley, Chairman of the Executive Council of the Association of American Medical Colleges, were invited to Miami to make a survey of Dade County to ascertain the feasibility of establishing a medical school in that area. These gentlemen made a complete survey of the facilities, hospitals, the medical profession and the University of Miami and made a written report of their findings.
This report pointed out that it was the policy of the Council on medical education and the association of American Medical Colleges to approve and accredit no Medical College until it was in full operation with classes in each four years of the curricula. Summarized, the report set out the requirements of the council on medical education and hospitals of the American Medical Association for membership in the Association of American Medical Colleges to receive final accreditation to be as follows:
(1) Sufficient available funds for constructing and equipping a modern medical school building and to attract a competent dean and faculty.
(2) Definite agreement giving the school authority to appoint the medical staff of Jackson Hospital.
(3) Assurance of operation of hospital in accordance with recognized standards.
(4) Assurance of the subsidy of $3000.00 per student being made available.
The record shows without contradiction that requirements (1), (2) and (3) have been met. Can the act be construed so as to make (4) the subsidy of $3000 per student per year for the present biennium available? The problem is not so much one of semantics as it is arriving at the purpose of the act when read as a whole. It is not a question of supplying or deleting words or distorting and analyzing phrases to see what the Legislature had in mind. The problem is to arrive at the legislative intent from the content of the act as is. This and other courts of last resort have so repeatedly held this to be the key to interpretation that it is trite to cite supporting authority. United States v. American Trucking Association, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345; United States v. Evans, 333 U.S. 483, 68 S.Ct. 634, 92 L.Ed. 823; Theo Hirsch Co. v. McDonald Furniture Co., 94 Fla. 185, 114 So. 517; Milam v. Davis, 97 Fla. 916, 123 So. 668; State of Florida v. Sullivan, 95 Fla. 191, 116 So. 255; Driskel v. O'Connor, 339 Pa. 556, 15 A.2d 366.
*701 Casual examination of the title, the preamble and sections of the act summarized in the forepart of this opinion, can leave no doubt about the intent of the legislature being to encourage the establishment of an accredited medical school at the earliest date possible. But, say appellants, Miami University is not yet approved and accredited as required by the act. That may be true, but the answer to this criticism is that the legislature knew when it passed the act that there was no medical school of any kind in the state and that any school attempting to meet the requirements of the act would require four years to become fully accredited. The requirements of the act to merit the appropriation are greater than those required by the council on medical education and hospitals of the American Medical Association. Miami University has met the requirements of both except the four year curricula. It is hardly possible to meet this one till the school has been in existence four years. Section three of the act provides that the "Board of Control shall, within sixty (60) days of the receipt of the student enrollment of said medical school, pay to said school each year the sum of Three Thousand Dollars ($3000) for each student accepted and approved for enrollment in said medical institution". Section six making the appropriation, allocates it "for the sole purpose of carrying out the provisions of this Act during the period from July 1, 1951, through June 30, 1953."
When these limitations on the appropriation are tied to the language, urgency and purpose of the act, we cannot escape the conclusion that the legislature intended the appropriation to be available each year on receipt of the student enrollment as provided in section three, provided the first medical school has met all requirements of the act and the American Medical Association to that date. This seems to be the reasonable interpretation and it certainly effects the legislative purpose. Read in sum we think the act refutes any other purpose. It is not the function of a court to search out ways to strike an act down or to defeat its purpose. The court's function is to find ways within the terms of the act to carry out the purpose of the legislature.
It is last contended that Chapter 26763, Acts of 1951, is violative of Sections 7 and 10, Article IX, State Constitution.
In so far as it is pertinent to this case, Section 7, Article IX, prohibits the levy of a tax for any chartered company in the state, and Section 10, Article IX, forbids pledging or loaning the credit of the state to any individual company, corporation or association. Nor shall the state become a joint partner or stockholder in any company, association or corporation.
Appellants rely on City of Daytona Beach v. King, 132 Fla. 273, 181 So. 1, to support their contention. This case had to do with the expenditure of city taxes on a private golf course. We do not think it has any relation to the case at bar, neither do we think a non-profit Educational Institution, such as the University of Miami, is any such "chartered company" "individual Company" "corporation or association" as is contemplated by Sections 7 and 10, Article IX.
The considerations which prompted the passage of Chapter 26763 are succinctly stated elsewhere in this opinion. It is further pointed out that Florida is the largest state in the Union without a Medical School. It is the only state in the South without one. Not only that, Florida is contributing large sums to out of state Medical Schools for the medical education of Florida men and women. These are the considerations that induced the passage of the act in question. In view of the conclusive showing of the immediate and pressing purpose of the legislature it seems that there is no merit to the contention that the case is prematurely brought.
It is common knowledge that the legislature has for years been considering ways and means to better provide for medical education in the state. Whether or not the plan provided in the act under review is the best one or even a good one is a question of policy with which we have no concern. It is a legislative prerogative and the law, constitutional and statutory, *702 imposes the duty of providing ample educational facilities for the people of the state on the legislature. We find nothing in Sections 7 and 10, Article IX or any other provision of the Constitution, that forbids. The regional educational act and other provisions for scholarships in various state schools are not materially different and have been provided for years without question.
It is accordingly our view that the declaratory judgments act was properly invoked, and that the appropriation is available annually as soon as the student enrollment of the first Medical School qualifying under the act is certified to the Board of Control as required by Section three, provided other requirements of the Act, the Council on Medical Education and the Association of American Colleges to that date have been met. We think there is no merit to the constitutional question based on Sections 7 and 10, Article IX.
Petition for certiorari is denied as to the judgment in each case.
It is so ordered.
HOBSON, ROBERTS and DREW, JJ., and TILLMAN and CARROLL, Associate Justices, concur.
THOMAS, J., heard the argument but is not participating in the judgment.