272 So.2d 141 (1972)
James A. SEBESTA, As Supervisor of Elections of Hillsborough County, Florida, Appellant,
v.
Michael J. MIKLAS et al., Appellees.
Calvin CARTER and John Thomas Touchton, Appellants,
v.
Michael J. MIKLAS et al., Appellees.
Nos. 42872, 42835.
Supreme Court of Florida.
October 18, 1972.
*143 John R. Lawson, Jr., of Holland & Knight, Tampa, for Calvin W. Carter and John Thomas Touchton, and Warren M. Cason, County Atty., and David W. Thorpe, Asst. County Atty., for James A. Sebesta, appellants.
Joseph C. Jacobs of Ervin, Varn, Jacobs & Odom, Tallahassee, Paul B. Johnson of Gregory, Cours, Paniello & Johnson, Tampa, for appellees.
James M. McEwen, of Gibbons, Tucker, McEwen, Smith, Cofer & Taub, Tampa, for appellees-intervenors George W. Fee, and others; Paul S. Buchman, Plant City, for appellees-intervenors Henry S. Moody, and others.
Robert W. Morrison, Ft. Lauderdale, of Miller & McKendree, for George H. Sheldon, as amicus curiae.
McCAIN, Justice.
This case comes here on direct appeal from a judgment of the Circuit Court of Hillsborough County declaring Chapter 72-555, Laws of Florida, invalid and permanently restraining and enjoining the Supervisor of Elections of Hillsborough County from providing a referendum ballot pursuant thereto. Because the final judgment passed directly upon the validity of a state statute, we have jurisdiction under Fla. Const., Article V, § 4(2), F.S.A.
The facts are not disputed. Chapter 72-555, a special act of the Legislature, creates a single unified government for Hillsborough County and provides a county home rule charter effective upon adoption of the Act by a majority of the electors of Hillsborough County. The referendum is scheduled to be held simultaneously with the forthcoming general election on November 7, 1972.
The Charter provides that the legislative power of the county shall be vested in a nine-member county council serving four year terms, one member to be elected from each of the nine districts into which the county is apportioned by the Charter. Those residents of a district desiring a seat on the council must initially submit to a non-partisan "primary" election within their district. The two candidates receiving the highest number of votes from the residents of the district are considered nominated by the voters, and are then placed on an at-large ballot voted on in a general election by the entire electorate of the county. This system is designed to make the council members responsive both to their home districts and to the county as a whole.
Section 19.07 of the Act apportions the county into nine initial council districts composed of groupings of existing city and county voter precincts. Existing precincts are used to permit all the voters in a given precinct to use the same voting machine. Using the 1970 federal census figures, the County Planning Commission has determined that a majority or five, of the nine council members to be elected under the apportionment scheme will be elected by no less than 53% of the residents of the County. District populations deviate from population equality by the following percentage figures, with plus designating overrepresentation and minus designating underrepresentation:

 District #1  plus 3.4%
 District #2  plus 2.3%
 District #3  plus 7.6%
 District #4  plus 3.5%
 District #5  minus 1.7%
 District #6  plus 7.7%
 District #7  minus 12.8%
 District #8  minus 2.7%
 District #9  minus 7.4%

*144 Thus, using 1970 federal census statistics, the present plan produces a total deviation from complete population equality of 20.5%.
Additionally, Section 19.07 of the Charter contains a curious legislative defect: it omits entirely Precinct 3 (Davis Islands) from the precinct groupings contained therein. More will be said concerning this deficiency later. Suffice it to say at this juncture that the omission appears to have been inadvertent and clerical; Precinct 3 was evidently intended for inclusion in proposed District #2.[1]
Upon adoption of Chapter 72-555 by the Legislature, appellee Miklas and others, all electors of Hillsborough County (with Miklas residing in Precinct 3), brought suit in the Circuit Court against defendant Sebesta, as Supervisor of Elections, seeking: (1) a declaration that the Act failed to comply with the "one man, one vote" standard of Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); and (2) to enjoin defendant Sebesta from providing a referendum ballot pursuant to the Act. Petitions to intervene in the proceedings filed by members of the Council of the City of Temple Terrace and by appellant Carter and others were granted by the trial court.
Trial without jury was held on August 29 and 30, 1972. On September 6, 1972, final judgment determining Chapter 72-555 to be unconstitutional and void was entered by the trial court. In pertinent part, the trial court held:
"The Court finds that Chapter 72-555, Laws of Florida 1972 is unconstitutional and void. Said Act clearly violates the requirements of the Constitutions of Florida and the United States that one man's vote in a district be worth as much as another. The variation in population from the less populous district to the most populous is too great. In addition, the variation in population from the less populous and most populous districts to the average or ideal size district is too great. There was no showing of circumstances or considerations sufficient to justify the variation which exists in the population of the council districts. Although the council members are to be elected in a county-wide election, nevertheless each candidate must first be nominated by the voters from his district and only the two candidates receiving the greatest and next greatest number of votes in their district are eligible to run countywide. Therefore, the voters of one district have no voice concerning who will be nominated from each of the other districts. The omission of Precinct 3 from the Act renders the Act fatally defective. Although there was a clerical error such error was made by someone not connected with the Legislature. Precinct 3 was not included in any of the nine council districts when the Act was considered by the Legislature. Therefore, this Court would be legislating by placing the omitted Precinct in the Act and designating the district in which it should be placed."
The separate appeals here of defendant Sebesta and intervenor Carter have been consolidated for all appellate purposes.
We concern ourselves first with the omission of Precinct 3 from the District groupings in Section 19.07 of the Act. It is readily apparent from the purpose and overall intention of the Legislature to "provide a Charter creating a single local government for Hillsborough County consolidating all existing municipalities ..." that the omission of Davis Islands from the Act was unintentional. The Act by its terms applies to the entire County. Since Davis Islands is part of the County, we can safely conclude that it was intended to be included in the consolidation scheme. Were this not so, the Act would have provided *145 a specific exception applicable solely to Precinct 3.
Thus, it is necessary to consider the propriety of correcting the scrivener's error by placing Davis Islands in one of the nine proposed districts. It is an established maxim of statutory construction that courts have the judicial obligation to sustain legislative enactments when possible. Armstrong v. City of Edgewater, 157 So.2d 422 (Fla. 1963); Overman v. State Board of Control, 62 So.2d 696 (Fla. 1953). On the other hand, this Court has been extremely reluctant in the past to reword statutes enacted by the Legislature, and has in general limited such corrections to cases where the legislative intent was clear from a reading of the statute itself, or where the statute was absurd on its face without the addition of the word or phrase. Armstrong v. City of Edgewater, supra; Haworth v. Chapman, 113 Fla. 591, 152 So. 663 (1933); and In re Sherman's Estate, 146 Fla. 643, 1 So.2d 727 (1941). Admittedly, were we to follow this line of precedent strictly, emendation of the Charter would be impermissible in this instance.
Rules of statutory construction, however, should never be applied without regard to their underlying rationale. In situations requiring rewording of statutes, the overriding concern of this Court has been effectuation of the manifest intention of the Legislature. The strictures placed on the procedure have been designed to avoid judicial speculation as to the intent of the Legislature where such intent was unclear or ambiguous. Thus, it would seem that if the legislative intent with regard to a word or phrase omitted from a statute is readily ascertainable, whether or not such intent appears from the content of the statute itself, then this Court may supply such omitted word or phrase. In reaching this conclusion we do not abandon our previous cautious approach to statutory emendation; rather, we reaffirm it and emphasize that it will continue to be the exceptional case in which this Court will undertake to correct scrivener's defects in enacted statutes.
In the case sub judice, the legislative intent with regard to Davis Islands is readily ascertainable although such intent does not appear on the face of the Charter. The mass of testimony and exhibits introduced below by both sides discloses that Precinct 3 was intended from the start to be incorporated in proposed District #2. It was never considered for inclusion elsewhere. All the district maps in the legislative file allot Precinct 3 to District #2; summaries of the legislation prepared for use by the Legislature place Davis Islands in District #2; and the population figures prepared for legislative use all allocate the residents of Precinct 3 to District #2. In short, Precinct 3 was at all times intended to become a part of District #2, but was inadvertently omitted from that District in the draft of the Charter adopted by the Legislature. Under these circumstances, it is not an indulgence in judicial "speculation" or "legislation" to allocate the omitted precinct to its proper district. Accordingly, Precinct 3 (Davis Islands) is hereby inserted in the precinct grouping for proposed District #2 specified in Section 19.07 of Chapter 72-555, Laws of Florida.
The second, and more serious challenge to the Charter is the assertion that the disparity in district populations is too great to comply with the "one man, one vote" requirement of Reynolds v. Sims, supra, and subsequent cases.
In Avery v. Midland County, Texas, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968), the U.S. Supreme Court held the standards of Reynolds applicable to local as well as state elections. The Court said in part:
"When the State apportions its legislature, it must have due regard for the Equal Protection Clause. Similarly, when the State delegates lawmaking power to local government and provides for the election of local officials from *146 districts specified by statute, ordinance, or local charter, it must insure that those qualified to vote have the right to an equally effective voice in the election process.
......
"... not infrequently, the delegation of power to local units is contained in constitutional provisions for local home rule which are immune from legislative interference. In a word, institutions of local government have always been a major aspect of our system, and their responsible and responsive operation is today of increasing importance to the quality of life of more and more of our citizens. We therefore see little difference, in terms of the application of the Equal Protection Clause and of the principles of Reynolds v. Sims, between the exercise of state power through legislatures and its exercise by elected officials in the cities, towns, and counties."
We do not think, as appellants contend, that the recent case of Abate v. Mundt, 403 U.S. 182, 91 S.Ct. 1904, 29 L.Ed.2d 399 (1971) represents a departure from the Avery rationale. In that case the U.S. Supreme Court upheld an overall deviation of 11.9% from strict population equality in a reapportionment scheme for Rockland County, New York. The Court concluded that the deviation was acceptable because of the peculiar relationship of the five towns which constituted the county and the unusual history of legislative cooperation and interdependence between the county and towns. In short, Justice Marshall, speaking for the majority, was of the view that the deviation of 11.9% was justified by legitimate county considerations.
Rational state and local policy considerations have long been a recognized exception to the requirement of strict population equality. Indeed, this view, coupled with a warning, was first articulated in Reynolds v. Sims itself:
"So long as the divergences from a strict population standard are based on legitimate considerations incident to the effectuation of a rational state policy, some deviations from the equal-population principle are constitutionally permissible with respect to the apportionment of seats in either or both of the two houses of a bicameral state legislature. But neither history alone, nor economic or other sorts of group interests, are permissible factors in attempting to justify disparities from population-based representation. Citizens, not history or economic interests, cast votes ..."
And in Swann v. Adams, 385 U.S. 440, 87 S.Ct. 569, 17 L.Ed.2d 501 (1967), the Supreme Court overturned a proposed reapportionment of the Florida Legislature incorporating a deviation from strict population equality of 25% for the Senate (with a 1.30 to 1 ratio between the largest and smallest districts) and 33% for the House (with a 1.41 to 1 population ratio) because of the State's failure to justify the variation in terms of acceptable state policy:
"We reverse for the failure of the State to present or the District Court to articulate acceptable reasons for the variations among the populations of the various legislative districts with respect to both the senate and house of representatives. Reynolds v. Sims, supra, recognized that mathematical exactness is not required in state apportionment plans. De minimis deviations are unavoidable, but variations of 30% among senate districts and 40% among house districts can hardly be deemed de minimis and none of our cases suggests that differences of this magnitude will be approved without a satisfactory explanation grounded on acceptable state policy."
In our view, a 20.5% overall variation in district populations is far from de minimis. It is a substantial deviation which can only be sustained on the basis of legitimate and rational county interests. The *147 justification urged by appellants asserts the importance of district boundaries which coincide with existing precinct boundaries, so that all voters in a given precinct may use the same voting machine. However, appellant Sebesta testified below that since passage of Chapter 72-555, at least 10 of the existing precinct lines have been changed to permit precincts to coincide with the boundaries of reapportioned congressional and state legislative districts. Therefore, despite the painstaking work of the Hillsborough County Planning Commission, substantial numbers of electors will find themselves voting in one precinct for state and federal purposes and another for County Council elections. In light of this circumstance, the current apportionment plan, in spite of the claims of its proponents, offers the voters of Hillsborough County little or no advantage in terms of convenience on election day as a compensation for the 20.5% variation in district populations.
Additionally, there is extensive testimony in the record that more precise alternative plans could be formulated using federal census tract information rather than precinct lines. Mr. Preston Howard, a land planner for the State of Florida, himself formulated such a plan (in approximately 4 "man-hours") incorporating a total deviation from the largest to the smallest district of 8.7%, considerably more de minimis than the variation of 20.5% under the challenged plan. Mr. Howard's plan also has the advantage of preserving the present boundaries of the City of Tampa. Given approximately four "man-weeks" in which to work, Mr. Howard testified that he could achieve an apportionment scheme for the County which would include a deviation from the average size district of less than 1%.
Accordingly, we conclude that the 20.5% population deviation incorporated in the proposed plan remains largely unexplained and unjustified by the proponents of the present scheme. Therefore, it is not in compliance with and cannot be sustained under Reynolds v. Sims, supra, and Avery v. Midland County, Texas, supra.
Having considered the apportionment scheme and determined it to be deficient, we turn now to the proper disposition of the cause. As appellants note, the apportionment plan comprehends only a small portion of the Charter which, in its entirety, creates a complete county government comprizing legislative, quasi-judicial and administrative functions. On the other hand, because County Council elections are the sine qua non without which the Charter cannot be effectively implemented, severability is impossible. We conclude, therefore, that the November 7, 1972 referendum should be allowed to proceed to permit the electorate of Hillsborough County to express its views on consolidation and home rule. If the referendum fails of passage, the question of apportionment will be rendered moot and no further action need be taken. But if the Charter is adopted by the voters, the four month interim period before County Council elections are scheduled to take place[2] is adequate time for the Circuit Court of Hillsborough County to fashion an apportionment scheme which will meet the requirements of Reynolds and Avery, supra. Accordingly, the Circuit Court of Hillsborough County, acting through Judge Spoto, the trial judge below, is hereby ordered, contingent upon passage of the Charter referendum on November 7, 1972, to apportion Hillsborough County, including Davis Islands, into nine districts of substantially equal population from which members of the County Council shall be elected. The Circuit Court shall permit all interested parties to the pending litigation to be heard and shall enter a decree effecting such apportionment on or *148 before December 22, 1972. Upon entry of such decree, the Circuit Court shall instanter transmit the record in the cause back to this Court for review. The parties to this cause shall have to and including December 28, 1972 to file briefs in opposition to and in support of the plan formulated by the Circuit Court, with copies furnished to opposing counsel.
The judgment of the Circuit Court of Hillsborough County is reversed and the cause temporarily relinquished to that Court for the further proceedings described above. Because of the short span of time within which the trial judge must hold hearings and fashion the required apportionment scheme, this order is made effective immediately, and a petition for rehearing will not be allowed.
It is so ordered.
ROBERTS, C.J., and CARLTON, ADKINS and BOYD, JJ., concur.
POPPER, Circuit Judge, dissents with opinion.
DEKLE, J., dissents and concurs with POPPER, Circuit Judge, with opinion.
POPPER, Circuit Judge (dissenting):
The question before the Court is but a simple one  the determination of the constitutionality of Ch. 72-555, Laws of Florida. The Chancellor below determined the act to be unconstitutional and rightly so. To create legal amputation of the intended bill for the voters to pass upon or reject has no legal precedence. All precedents cited in the majority view are acts by the courts applying to existing legislative bodies to reapportion according to the guidelines set forth in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506.
In the instant case it is the creation of a new governmental body by this Act which the majority would prospectively reapportion. To act in haste is not part of the judicial process. For surely to give the citizens of Hillsborough County but a piecemeal matter to vote upon was not the intent of the framers of Ch. 72-555. Time is not of such an essence that would cause the courts to enter the legislative thicket and break down the fence that separates the judicial from the legislative, when properly a new and constitutionally conforming Act may be presented to the voters at a later date.
There is no question that it is the right of the people to determine by their vote whether or not Hillsborough County should or should not have metropolitan government and this right should not be taken away, but this right should be given to the people through normal process without the invasion of the courts.
Surely the present government may exist until proper action is taken without the necessity of the courts dictating. All other matters are superfluous at this time and constitute an invasion of the legislative field and certainly not a proper act of the Court.
As to Precinct 3's inclusion in District 2, I will not discuss the matter, for this matter is incidental to the issue at this time as to the constitutionality of the overall act.
It is for the aforementioned reasons that I dissent from the majority.
DEKLE, Justice (dissenting):
I concur in Judge Popper's incisive views and dissent upon the further ground that superimposing an at-large vote upon district elections is novel and in my view is unconstitutional as violative of the "1-man, 1-vote" mandate of Reynolds v. Sims, supra.
NOTES
[1] The percentage population deviation for District #2, supra, assumes inclusion of Precinct 3 in that district. The deviation from optimum population would be approximately 8.3% were Precinct 3 omitted.
[2] 14.06. "Regular Election Dates. The regular elections for officers of this Government shall be one election in two parts, a first election and a second election, which shall be held on the first and third Tuesdays respectively of March in 1973 and every four years thereafter; ..."