(May 25, 1910.)

## REILLY ATKINSON, Plaintiff, v. BOARD OF COMMISSIONERS OF ADA COUNTY, Defendant.

[108 Pac. 1046.]

CONSTITUTIONAL LAW—RAILROAD DISTRICTS—INHIBITION OF THE CONSTITUTION.

(Syllabus by the court.)

1. The act of the legislature approved March 16, 1909 (Sess. Laws 1909, p. 238), providing for the formation of railroad districts and the voting of bonds and purchase or construction of railroads by such districts and providing for operating or leasing the same, is in violation of the provisions of sec. 4 of art. 8 of the state constitution and contrary to the spirit of secs. 2 and 3 of art. 8 and sec. 4 of art. 12 of the constitution.

2. That which the constitution directly prohibits may not be done by indirection or by a general legislative act which is meant and intended to include and accomplish the purposes and objects specifically or impliedly prohibited.

3. It was never anticipated or intended by the framers of the constitution that counties, or other political subdivisions, would or could enter into the business of railroad building, but, on the contrary, the specific prohibitions found in the constitution manifest a clear purpose and intent to prohibit the state or county, or any subdivision thereof, from entering into any such enterprise.

4. The building of a railroad is not within itself an exercise of governmental power, but is purely a business enterprise, and if it is to be engaged in by the state or any of its political subdivisions,

it must be done by virtue of the proprietary powers of the state or political subdivisions thereof and not under the police or general welfare powers of the state.

Original action for a writ of mandate. Demurrer to the complaint sustained and action dismissed.

Karl Paine, and B. S. Crow, for Plaintiff.

In the cases contemplated by the constitution, the state or municipality would not become the absolute owner of the railroad, with power to manage, operate and control the same, or the owner of an interest therein; hence if these provisions were applicable to districts other than political subdivisions of the state, and we submit they are not, they would not prevent such districts from constructing railroads that were to become their own property. (*City of Cincinnati v. Dexter,* 55 Ohio St. 93, 44 N. E. 520.)

We do not discuss the wisdom of this legislation, for, as we understand it, the court is not concerned with the wisdom or folly, as the case may be, of the statute. (*State v. Dolan,* 13 Ida. 693, 92 Pac. 995, 14 L. R. A., N. S., 1259.)

D. G. McDougall, C. P. McCarthy, J. H. Peterson, and O. M. Van Duyn, for Defendant Board.

In passing upon the question of whether or not this law is an evasion of our constitution, the court is entitled to read between the lines of this bill and form its conclusion as to just what the results of such legislation will be. Of what use or benefit to our community would be a railroad between Boise and Highland without connection with trunk lines? Such a line of railroad would be absolutely at the mercy of the trunk line, and in time would become a part of such trunk line. If we then look at the railroad at a time when it has passed into the hands of a railroad corporation, can we truthfully say that from the inception of such railroad the public has not loaned its credit thereto? (*Taylor v. Ross County Commrs.,* 23 Ohio St. 22.)

It is a fair inference that the object of this legislation was, and its operation will be, to enable the political organ-

izations and municipalities of the state to do indirectly what they are prohibited from doing directly; that the main object of this legislation will be to enable municipalities of the state to use their credit, and raise and expend their money in aid of railroad companies. (*Counterman v. Dublin Township,* 38 Ohio St. 515; *Wyscaver v. Atkinson,* 37 Ohio St. 80.)

In these cases the court looked behind the language of the bill and went into its utility, operation and purpose, and found that while, strictly speaking, the public credit was not *loaned,* at the same time the utility, operation and purpose of the law would bring about exactly the same results, and that it was not in the contemplation of the framers of the constitution that an evasion so palpable as this could be indulged in.

AILSHIE, J.—This is an original action commenced in this court praying for the issuance of a writ of mandate against the commissioners of Ada county, requiring and compelling them to make an order calling an election for the purpose of voting on the formation of a railroad district in the manner authorized and provided for by the act of March 16, 1909 (Sess. Laws 1909, p. 238). The real question involved in this proceeding is the constitutionality of this statute. The act is intended to authorize the formation of railroad districts by a vote of the resident land owners of the districts. It provides for the manner of organizing the district, the election of directors, the voting of bonds, the selection and acquiring rights of way, and the building and constructing of lines of railroad and operating or leasing the same. The act appears to have been very carefully drawn, and conforms very closely to the provisions of the irrigation district laws of this state, providing substantially the same method of formation of the district, of levying and collecting assessments, determining benefits, and other incidents and details of the irrigation act.

Sections 2, 3, and 4 of art. 8 of the state constitution read as follows:

Sec. 2: "The credit of the state shall not, in any manner, be given, or loaned to, or in aid of any individual, association, municipality or corporation; nor shall the state directly or indirectly, become a stockholder in any association or corporation."

Sec. 3: "No county, city, town, township, board of education, or school district, or other subdivision of the state shall incur any indebtedness, or liability in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose, nor unless, before or at the time of incurring such indebtedness, provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same. Any indebtedness or liability incurred contrary to this provision shall be void: Provided, That this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state."

Sec. 4: "No county, city, town, township, board of education, or school district, or other subdivision, shall lend, or pledge the credit or faith thereof directly or indirectly, in any manner, to, or in aid of any individual, association or incorporation, for any amount or for any purpose whatever, or become responsible for any debt, contract or liability of any individual, association or corporation in or out of this state."

Section 2 prohibits the state in any manner ever becoming interested with any individual, association or corporation in any business enterprise, and it likewise prohibits the state in any manner loaning its credit to the aid of such an enterprise or becoming a stockholder therein; while sec. 4 makes substantially the same prohibition against any county, city, town, township, board of education, school district, or other subdivision of the county or state, ever lending its credit, either directly or indirectly, to any business enterprise in aid

of any individual, association or corporation. Sec. 4 of art. 12 reiterates substantially the same thing with reference to counties and municipal corporations as is provided against in sec. 4 of art 8. Sec. 4 of art. 12, however, specifically authorizes cities and towns to contract indebtedness for "school, water, sanitary and illuminating purposes," thereby excluding all other purposes not governmental in their character.

It is argued by the plaintiff in this case that under the authority of *Nampa etc. Irr. Dist. v. Brose,* 11 Ida. 474, 83 Pac. 499, holding the district irrigation law of this state valid and constitutional, that it must necessarily and logically follow that the present act authorizing railroad districts is also constitutional. The foregoing case is clearly not decisive of the question now before the court. There is a wide difference between the subject of and necessity for irrigation in this state and railroad building. Water when secured becomes appurtenant to land, and in vast sections of this state it is absolutely essential to life and habitation that it be secured by means of canals and ditches. When water is conveyed to a tract of land, it is unnecessary that it be carried further in order to be useful or marketable. It needs nothing further than application to the soil. It has in fact already become attached to and the chief value of the land and will be fully as useful if not another acre be watered as if thousands adjoining be watered. But a railroad is an entirely different utility. A railroad from one man's farm to another would be of no use, nor would it in many cases be of any use from one side of a county or district to the other. It is a medium of transportation and commerce, and in order to be of any use or value whatever must tap centers of population, production and manufacture. A railroad in order to be of use or value must extend from some place to somewhere. The act in question authorizes the building of "railroads," but the result under the act must necessarily be that a district can only build a part of a road,—a branch line or feeder to a main or trunk line. As a court, we cannot be ignorant of that which is common knowledge. With the wisdom of legislation

we have nothing to do, but it is our duty to look to the results an act will and is intended to accomplish and determine whether those results will be violative of the constitution. If each community is to be authorized to form a district and bond itself to build a stub or branch line to connect with the main transcontinental trunk lines, will they not be absolutely at the mercy of the trunk line? And will it not result in the district building the branch line for the *use of or donation* in whole or in part to the main line, and thereby doing *indirectly* the very thing sec. 4 of art. 8 of the constitution forbids and prohibits? No one anticipates or expects that a district as authorized by this act either can or will operate a line of railroad extending through or across such district only. It is to all purposes and intents an inducement or subsidy to a main or through line. If it is constitutional to build such a line of road by a district, it would be constitutional to authorize its sale and thereby "indirectly . . . . aid . . . . a corporation" in violation of the constitution.

In *Wyscaver v. Atkinson*, 37 Ohio St. 80, the supreme court of Ohio had under consideration an act passed by the legislature in 1880 "to authorize certain townships to build railroads and to lease or operate the same." That act provided that townships falling within a certain class might vote bonds and construct a line of railroad and do the things necessary and incident thereto. The court held the act to be in violation of sec. 6, of art. 8 of the constitution of Ohio, which reads as follows: "The General Assembly shall never authorize any county, city, town or township, by vote of its citizens or otherwise, to become a stockholder in any joint stock company, corporation or association whatever, or to raise money for, or loan its credit to, or in aid of any such company, corporation or association." In considering this question, the supreme court said:

"Was it contemplated that a complete and independent railroad should be constructed by the township? We think not, and therefore, without speculating as to the manner in which it was intended that the result should be accomplished,

it is quite evident, to our minds, that the legislative intent, as well as that of the trustees of the township, was that the proposed road should in some manner and by some means become consolidated or connected with other roads, as part of a more extended line of railway, in order to make it at all subservient to the public welfare, and that in no other way could it be made of public utility.

"The purpose and effect of the statute is to unite the means and credit of the township with those of other parties in order to promote a common enterprise, to wit: the construction of a continuous line of railway, which could not be accomplished without such combination of interests."

The court quoted with approval from the opinion in *Walker v. Cincinnati,* 21 Ohio St. 54, 8 Am. Rep. 24, as follows: "The mischief which this section interdicts is a business partnership between a municipality or subdivision of the state and individuals or private corporations or associations. *It forbids the union of public and private capital or credit in any enterprise whatever.* In no project originated by individuals, whether associated or otherwise, with a view to gain, are the municipal bodies named permitted to participate in such manner as to incur pecuniary expense or liability. They may neither become stockholders, nor furnish money or credit for the benefit of parties interested therein. Though joint-stock companies, corporations and associations only are named, we do not doubt that the reason of the prohibition would render it applicable to the case of a single individual. The evil would be the same, whether the public suffered from the cupidity of a single person or from several persons associated together."

The learned justice who wrote the opinion in *Wyscaver v. Atkinson,* after quoting the above extract from *Walker v. Cincinnati,* added the further comment: "And I will add, that it makes no difference whether the scheme for the union of public and private money or credit originates with the party or parties representing the public or the private interests. In short, the thing prohibited is the combination in any form whatever of the public funds or credit of any

county, city, town or township with the capital of any other
person, whether corporated or unincorporated, for the pur-
pose of promoting any enterprise whatever."

In *McDonald v. Doust*, 11 Ida. 24, 81 Pac. 63, 69 L. R. A.
220, this court said: "Acts inconsistent with the spirit of
the constitution are as much prohibited by its terms as are
acts specifically enumerated and forbidden therein." This
position is reinforced by the further fact that railroad build-
ing is not within itself an exercise of governmental power,
but is purely a business enterprise and must be justified, if at
all, under the proprietary powers of the state or political
subdivision. Previous action of the legislature and the people
with reference to this provision of our constitution is a perti-
nent and proper subject of inquiry. In March, 1905, the
legislature by joint resolution submitted to the people a propo-
sition to so amend sec. 4, art. 8, of the constitution as to
authorize a "county, city, village, municipality or other sub-
division of the state" by vote of the people to "make dona-
tions to any railroad or other works of internal improvement"
to an amount not exceeding ten per cent of the assessed valua-
tion of such county. That amendment was defeated by an
overwhelming vote of the people. In this respect we have a
positive declaration from the people against any participation
by the counties or any of their subdivisions in railroad build-
ing in and of "any individual, association or corporation."

It is said that this provision does not prohibit the county
or other subdivision building and owning a road in its en-
tirety. It is true that the prohibition against absolute owner-
ship is not, in so many words, to be found in the constitution,
but it is clear from the context and the language employed
in secs. 2, 3 and 4, art. 8, and sec. 4, art. 12, that it was never
contemplated that the counties or other political subdivisions
would or could go into railroad building, and so the framers
of the constitution forbade donations or ownership in part.
They evidently appreciated the fact that a railroad to be of
any value to the people of Idaho must extend further than
across a county or even across the state,—that it must reach

the markets, not merely at one end of the line but at both ends. If the people want to authorize the formation of railroad districts, they can readily do so by adopting an amendment to the constitution, but until they do so we are constrained to hold such acts in conflict with the constitution.

The act in question is, in our opinion, violative of the spirit and intent of the constitution (secs. 2, 3, and 4, art. 8, and sec. 4, art. 12), and cannot be upheld.

The demurrer to the complaint is sustained, and the action will be dismissed. No costs awarded.

Sullivan, C. J., and Stewart, J., concur.