353 P.2d 767

VILLAGE OF MOYIE SPRINGS, IDAHO, a municipal corporation, and Thelma Berger, Chairman of the Board of Trustees of the Village of Moyie Springs, Idaho, and Everett Witt, R. B. Dugal, Eva Mae Stephens and Jack M. Billingsley, constituting the Board of Trustees of the Village of Moyie Springs, Idaho, in their official capacities, respectively, as such, Plaintiff-Respondent,

v.

AURORA MANUFACTURING COMPANY, an Idaho corporation, Defendant-Appellant.

No. 8895.

Supreme Court of Idaho.

June 28, 1960.

Thomas A. Mitchell, Coeur d'Alene, for appellant.

W. W. Nixon, Bonners Ferry, for respondent.

TAYLOR, Chief Justice.

January 27, 1960, the parties entered into a contract for a lease by the plaintiff (respondent) to the defendant (appellant) of certain industrial property to be acquired by the village pursuant to and in conformity with ch. 265, S.L.1959, and ordinance No. 17, passed and adopted by the village pursuant to said act. Defendant refused to further perform the agreement upon the advice of counsel that the act authorizing the ordinance and contract is unconstitutional. The village and its trustees brought this action against defendant for a declaratory judgment adjudicating the rights of the parties and the constitutionality of the statute and ordinance.

The legislative intent is declared in § 2 of the act as follows:

"It is the intent of the Legislature, by the passage of this act, to authorize municipalities to acquire, own,

lease or sell projects for the purpose of increasing and stabilizing employment, increasing career and job opportunities for Idahoans and Idaho graduates; increasing the utilization of raw materials, agriculture and other products and natural resources of this State, improve and furnish better health services and facilities, promote a sound balance in this State between agriculture, commerce and industry by inducing manufacturing, industrial and commercial enterprises to locate or expand in this State. It is intended that each project be self-liquidating. It is not intended hereby to authorize any municipality itself to operate any manufacturing, industrial or commercial enterprise. This act shall be liberally construed in conformity with the said intent." Ch. 265, S.L.1959, § 2.

The powers conferred upon municipal corporations are set forth in § 3 of the act:

"In addition to any other powers which it may now have, each municipality shall have the following powers: (a) to acquire, whether by construction, purchase, gifts, or lease, one or more projects, which shall be located within this State and may be located within or without the municipality, or partially within or partially without the municipality, but which shall not be located more than fifteen miles outside of the corporate limits of the municipality; (b) to sell or lease or otherwise dispose of any or all of its projects upon such terms and conditions as the governing body may deem advisable and as shall not conflict with the provisions of this act; (c) to issue revenue bonds for the purpose of defraying the cost of acquiring, by construction and purchase, or either, any project, and to secure the payment of such bonds, all as hereinafter provided. No municipality shall have the power to operate any project as a business or in any manner except as lessor thereof." Ch. 265, S.L.1959, § 3.

Other pertinent provisions of the act are as follows:

Section 4 authorizes the issuance by the municipality of bonds payable solely out of revenues derived from the project to finance which the bonds are issued; provides that the bonds shall not be a general obligation of the municipality within the meaning of art. 8, § 3, of the Constitution, nor a loan of credit of such municipality within the meaning of art. 12, § 4 of the Constitution; that the "Bonds and interest coupons issued under authority of this act shall never constitute an indebtedness of the municipality within the meaning of any State constitutional provision or statutory limitation, and shall never constitute nor give rise to a pecuniary liability of the mu-

nicipality or a charge against its general credit or taxing powers, and such fact shall be plainly stated on the face of each such bond." Ch. 265, S.L.1959, § 4; that the bonds may be payable in installments over a period of time, not exceeding thirty years.

Section 5 provides that, the principal and interest of the bonds shall be secured by a pledge of the revenues out of which the bonds are made payable; the bonds may be secured by a mortgage covering all or any part of the project and a pledge of the lease of such project; the "municipality shall not have the power to obligate itself except with respect to the project and the application of the revenues therefrom, and shall not have the power to incur a pecuniary liability or a charge upon its general credit or against its taxing powers." Ch. 265. S.L.1959, § 5.

Section 6 provides that the governing body must determine the amount necessary each year to pay the principal and interest on the bonds and the amount necessary to be paid each year into any reserve fund which it may deem advisable to establish for the retirement of the bonds and the maintenance of the project, and unless the lease requires the lessee to maintain the project and carry proper insurance, the estimated cost of maintaining the project and keeping it properly insured. Prior to the issuance of such bonds, the municipality is required to lease or sell the project under an agreement conditioned upon the completion of the project and payment to the municipality of such rentals or payments as will be sufficient to pay the principal and interest on the bonds and to build and maintain a reserve deemed advisable in connection therewith and the cost of maintaining the project and keeping it properly insured, unless the agreement requires the lessee to maintain and insure the project.

Section 7 authorizes the refunding of the bonds when deemed necessary by the governing body.

Section 8 requires that the proceeds from the sale of bonds be applied only for the purpose for which the bonds were issued.

Section 9 provides that the municipality shall have no power to pay out of its general funds, or otherwise contribute any part of the cost of acquiring such project.

Section 10 makes the bonds legal investments for savings banks and insurance companies.

Section 11 is as follows:

"The bonds authorized by this act and the income from said bonds, all mortgages or other security instrument executed as security for said bonds, all lease agreements made pursuant to the provision hereof, and revenue derived from any lease or sale by the municipality thereof shall be exempt

from all taxation by the State of Idaho, or by any subdivision thereof." Ch. 265, S.L. 1959, § 11.

Section 12 includes a provision that the act shall not be construed as requiring a vote of the electors of the municipality prior to the issuance of such bonds.

The ordinance and the contract provide for the acquisition by the village of a site and the construction of an industrial plant, to be leased to the defendant and occupied and used by it in a private manufacturing enterprise, for a period of thirty years. At the end of the thirty-year period, the bonds being retired, the defendant lessee is given an option to renew the lease for another thirty years at an annual rental of $1000, or to purchase the leased assets for $10,000.

In the ordinance the estimated cost of the acquisition of the "Manufacturing Project or Projects" is fixed at $10,000,000.

On this appeal the defendant seeks a determination by this court of the constitutionality of Chapter 265, Session Laws 1959. The constitutional provisions involved are as follows:

Art. 8, § 3:

"No county, city, town, township, board of education, or school district, or other subdivisions of the state, shall incur any indebtedness, or liability, in any manner, or for any purpose, ex-

ceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose, nor unless, before or at the time of incurring such indebtedness, provisions shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same. Any indebtedness or liability incurred contrary to this provision shall be void: provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state."

This section was amended by the people at the general election in November, 1950, by the addition thereto of the following:

"and provided further that any city or village may own, purchase, construct, extend, equip, within or without the corporate limits of such city or village, water systems and sewage collection systems, and water treatment plants and sewage treatment plants, and off street parking facilities, and, for the purpose of paying the cost thereof may, without regard to any limitation herein imposed, with the

assent of two-thirds of the qualified electors voting at an election to be held for that purpose, issue revenue bonds therefor, the principal and interest of which to be paid solely from revenue derived from rates and charges for the use of, and the service rendered by, such systems, plants, and facilities as may be prescribed by law."

Art 8, § 4:

"No county, city, town, township, board of education, or school district, or other subdivision, shall lend, or pledge the credit or faith thereof directly or indirectly, in any manner, to, or in aid of any individual, association or corporation, for any amount or for any purpose whatever, or become responsible for any debt, contract or liability of any individual, association or corporation in or out of this state."

Art. 12, § 4:

"No county, town, city, or other municipal corporation, by vote of its citizens or otherwise, shall ever become a stockholder in any joint stock company, corporation or association whatever, or raise money for, or make donation or loan its credit to, or in aid of, any such company or association: provided, that cities and towns may contract indebtedness for school, water, sanitary and illuminating purposes:

provided, that any city or town contracting such indebtedness shall own its just proportion of the property thus created and receive from any income arising therefrom, its proportion to the whole amount so invested."

Art. 8, § 2:

"The credit of the state shall not, in any manner, be given, or loaned to, or in aid of any individual, association, municipality or corporation; nor shall the state directly or indirectly, become a stockholder in any association or corporation, provided, that the state itself may control and promote the development of the unused water power within this state."

Prior to its amendment in 1950 this court had held that an ordinance providing for the purchase of a municipal water system with the proceeds of bonds, payable out of revenues to be derived from the water system, would create a liability on the part of the municipality in violation of art. 8, § 3, supra. Feil v. City of Coeur d'Alene, 23 Idaho 32, 129 P. 643, 43 L.R.A., N.S., 1095.

Referring to decisions from other jurisdictions, which had reached a contrary conclusion in cases involving revenue bonds, Justice Ailshie in the Feil case said:

"The reasoning, however, of those cases utterly fails when applied to our Constitution, for the reason that none

of those cases deals with the word 'liability,' which is used in our Constitution, and which is a much more sweeping and comprehensive term than the word 'indebtedness'; nor are the words 'in any manner or for any purpose' given any special attention by the courts in the foregoing cases. The framers of our Constitution were not content to say that no city shall incur any indebtedness 'in any manner or for any purpose,' but they rather preferred to say that no city shall incur any *indebtedness or liability* in any manner, or for any purpose. It must be clear to the ordinary mind on reading this language, that the framers of the Constitution meant to cover all kinds and character of debts and obligations for which a city may become bound, and to preclude circuitous and evasive methods of incurring debts and obligations to be met by the city or its inhabitants." 23 Idaho at page 50, 129 P. at page 649.

The rule of the Feil case was consistently adhered to by this court until the constitutional provision was amended. Boise Development Co. v. Boise City, 26 Idaho 347, 143 P. 531; Fluharty v. Board of County Com'rs, 29 Idaho 203, 158 P. 320; Boise-Payette Lumber Co. v. Challis Independent School Dist. No. 1, 46 Idaho 403, 268 P. 26; Miller v. City of Buhl, 48 Idaho 668, 284 P. 843, 72 A.L.R. 682;

Williams v. City of Emmett, 51 Idaho 500, 6 P.2d 475; Straughan v. City of Coeur d'Alene, 53 Idaho 494, 24 P.2d 321; General Hospital v. City of Grangeville, 69 Idaho 6, 201 P.2d 750.

Subsequent to the amendment, ordinances providing for the issuance of revenue bonds for the purposes specifically authorized by the amendment have been upheld. Schmidt v. Village of Kimberly, 74 Idaho 48, 256 P.2d 515.

The 1950 amendment authorizing a municipality to incur indebtedness and liabilities, in excess of its current annual income and revenue, for certain specified purposes does not include among such purposes any commercial or industrial enterprise of a private character.

Article 12, § 4, of the Constitution, supra, authorizes "indebtedness for school, water, sanitary and illuminating purposes."

In 1909 the legislature attempted to authorize the formation of railroad districts with the power to purchase or construct railroads, by means of bonds to be voted by the people of the respective districts. This court held that act unconstitutional on the ground that it was an attempt to permit counties and municipalities of the state to do through the organization of such districts what they could not do directly because of the constitutional limitations hereinabove set out, and that the building and operation of the contem-

plated railroads within the districts would indirectly constitute the giving of aid to the corporations operating transcontinental lines. Atkinson v. Board of Com'rs, 18 Idaho 282, 108 P. 1046, 28 L.R.A., N.S., 412.

Since 1909 the legislature has not attempted to authorize the municipalities of the state to engage in or sponsor projects heretofore exclusively within the domain of private enterprise. I.C., Title 50, chs. 13 and 28. Thus, we have a long history of recognition by the legislature of the constitutional limitations of the powers of municipalities to activities which are either governmental or embraced within the accepted definition of "public purpose", or "affected with a public interest", such as utilities.

Article 8, § 4, of our Constitution, supra, goes further and is more restrictive in its scope than either art. 8, § 3, or art. 12, § 4. It declares that no municipality "shall lend, or pledge the credit or faith thereof directly or indirectly, in any manner, to, or in aid of any individual, association or corporation, for any amount or for any purpose whatever."

It cannot be questioned that the purpose of the act now before the court and the ordinance enacted by the plaintiff village pursuant thereto is to lend the credit and faith of the municipality in aid of the defendant corporation. In fact, that is the purpose expressed by the legislature in its declaration of intent, to-wit: "inducing manufacturing, industrial and commercial enterprises to locate or expand in this State."

We are aware of decisions in other states upholding similar legislation. We have considered the following: Village of Deming v. Hosdreg Co., 62 N.M. 18, 303 P.2d 920; McConnell v. City of Lebanon, Tenn., 314 S.W.2d 12; Bennett v. City of Mayfield, Ky., 323 S.W.2d 573; Holly v. City of Elizabethton, 193 Tenn. 46, 241 S.W.2d 1001; Albritton v. Winona, 181 Miss. 75, 178 So. 799, 115 A.L.R. 1436; In re Opinion of the Justices, 256 Ala. 162, 53 So.2d 840.

Some of these decisions are distinguishable from the present case by reason of differences in the constitutional provisions involved. But, we respectfully disagree with the reasoning by which the conclusion is reached in others, that projects such as we have here do not constitute a lending of the credit of the municipality. Such decisions read like apologies to constitutional limitations, dictated by expediency.

It is obvious that one of the prime purposes of having the necessary bonds issued by and in the name of a municipality is to make them more readily salable on the market. Thus, the credit of the municipality is extended in aid of the project, regardless of the limitations placed upon

the remedy of the purchaser. We agree with the reasoning of the courts of Nebraska and Florida. In State ex rel. Beck v. City of York, 164 Neb. 223, 82 N.W.2d 269, the Nebraska court said:

"If evidences of indebtedness by interested private persons are inadequate and revenue bonds of the city are sufficient, either the credit of the city has been extended or their purchasers are victims of a base delusion. It seems clear to us that the revenue bonds are issued by the city in its own name to give them a marketability and value which they would otherwise not possess. If their issuance by the city is an inducement to industry, some benefits must be conferred, or it would be no inducement at all. Such benefits, whatever form they may take, necessarily must be based on the credit of the city. The loan of its name by a city to bring about a benefit to a private project, even though general liability does not exist, is nothing short of a loan of its credit." 82 N.W.2d at page 272.

Referring to contrary decisions from other states, the Nebraska court said:

"These cases are based on what we deem fundamental fallacies of reasoning. The first is that a revenue bond for which a city is not generally liable is not within the prohibition against the State giving or loaning its credit. The second is that the issuance of such revenue bonds for the construction of industrial plants for private users is a valid exercise of the proprietary powers of a municipality. The third is that the issuance of revenue bonds for the construction of industrial buildings for private use is for a public purpose." 82 N.W.2d at page 272.

■ The first ground for upholding such an act cannot be adopted in this state, for the reasons above expressed. As to the second, as we have pointed out, the proprietary powers of municipal corporations in this state are limited to functions and purposes which are municipal and public in character as distinguished from those which are private in character and engaged in for private profit. As to the third ground, we do not agree that an incidental or indirect benefit to the public can transform a private industrial enterprise into a public one, or imbue it with a public purpose. As the Nebraska court said:

"It is true, of course, that the city may be benefited by the location of the company in the city. It may produce employment for citizens of the community. It may tend to balance a locally restricted economy. But general benefit to the economy of a community does not justify the use of public funds of the city unless it be for a public as distinguished from a private purpose. This is simply a case where the city is

attempting to use the powers, credits, and public moneys of the city to purchase land and erect industrial buildings thereon for the use of a private corporation for private profit and private gain. It serves no public or municipal purpose. The Act purports to grant powers to cities which are beyond the authority of the Legislature to confer.

\* \* \* \* . \* \*

"To permit legislation of this character to stand in the face of constitutional prohibitions would constitute a death blow to the private enterprise system and reduce the Constitution to a shambles in so far as its protection of private enterprise is concerned." 82 N.W.2d at page 274.

In State v. Town of North Miami, Fla., 59 So.2d 779, the Supreme Court of Florida said:

"Every new business, manufacturing plant, or industrial plant which may be established in a municipality will be of some benefit to the municipality. A new super market, a new department store, a new meat market, a steel mill, a crate manufacturing plant, a pulp mill, or other establishments which could be named without end, may be of material benefit to the growth, progress, development and prosperity of a municipality. But these considerations do not make the acquisition of land and the erection of buildings, for such purposes, a municipal purpose.

\* \* \* \* \* \*

"Our organic law prohibits the expenditure of public money for a private purpose. It does not matter whether the money is derived by ad valorem taxes, by gift, or otherwise. It is public money and under our organic law public money cannot be appropriated for a private purpose or used for the purpose of acquiring property for the benefit of a private concern. It does not matter that such undertakings may be called or how worthwhile they may appear to be at the passing moment. The financing of private enterprises by means of public funds is entirely foreign to a proper concept of our constitutional system. Experience has shown that such encroachments will lead inevitably to the ultimate destruction of the private enterprise system." 59 So. 2d at pages 784 and 785.

"There is no similarity between this case and those where the Legislature authorizes a municipality to establish a sewage system, a water system, an electric light plant, or to furnish some other public utility or service essential to the welfare of all the people of a municipality; or for the exercise of the police power for slum clearance, or for the removal of blighted areas, or

some such other undertaking for the protection and conservation of the public health, or to eliminate crime-breeding places or to conserve the morals, or protect the lives and limbs of the people." 59 So.2d at page 787.

"A plan to evade and circumvent the constitutional limitation on the creation of debt is not valid merely because the bonds representing the debt are declared not to be the obligations of the municipality. * * *

" 'Contrary to popular opinion, mere schemes to evade law, once their true character is established, are impotent for the purpose intended. Courts sweep them aside as so much rubbish.' Davis v. People, 79 Colo. 642, 247 P. 801, at page 802.

"What cannot be done directly by the City of Idaho Falls because of constitution limitations cannot be accomplished indirectly. That which the constitution directly prohibits may not be done by indirection through a plan or instrumentality attempting to evade the constitutional prohibition. Atkinson v. Board of Commissioners, 18 Idaho 282, 108 P. 1046, 28 L.R.A.,N.S., 412; Macallen Co. v. Commonwealth of Massachusetts, 279 U.S. 620, 49 S. Ct. 432, 73 L.Ed. 874." O'Bryant v. City of Idaho Falls, 78 Idaho 313, 303 P.2d 672, 678.

■ Neither can legislature bind the courts by its declaration that the act shall not be construed to be in violation of certain provisions of the constitution. The limitations of the constitution are binding upon the legislature, and cannot be nullified or avoided by the simple device of declaring them inapplicable.

"While such a legislative declaration is entitled to great weight, it is not conclusive. There are limits beyond which the Legislature cannot go. It cannot authorize a city to spend public money, or lend or give away, directly or indirectly, its credit or property for a purpose which is not a public one." State ex rel. Beck v. City of York, 164 Neb. 223, 82 N.W.2d 269, at page 273.

"We must deal with this question as strictly a judicial one, however clear our convictions are that the purposes sought to be obtained are praiseworthy and beneficial to the public. We cannot for that or any other reason usurp authority which does not belong to us, and by judicial construction make ineffectual a plain constitutional provision, however long innocently violated. Where the constitution, being the supreme law of the state, forbids an act, no legislative enactment can legalize it. And for this court to do other than to adhere strictly to the provision of the constitution would be an act of ju-

dicial lawlessness. Nor will the best and most patriotic intentions make that law which contradicts the principles of the Constitution or contravenes it justifiable." Fluharty v. Board of County Com'rs, 29 Idaho 203, at page 211, 158 P. 320, at page 322.

■ The exemption from taxation allowed by the act is also questioned under art. 7, § 5, of the Constitution, which is as follows:

"All taxes shall be uniform upon the same class of subjects within the territorial limits, of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal: provided, that the legislature may allow such exemptions from taxation from time to time as shall seem necessary and just, * * *."

The evident purpose of the exemption contained in the act is to extend to the purchasers of the bonds and securities the protection and advantage of an exemption from taxation.

"The burden of taxation is justly a common one. Its object is to provide means for the protection and benefit of all; and this being so, all should help to bear it. An exemption to one person is but additional burden to another. To take from one, and give to another, under the guise of taxation, is, indeed, but robbery under a legalized form, and counter to the spirit and genius of our system of government. It is true, the taxing power is a broad and liberal one, and properly so. It extends aid to public schools, because education is a public purpose; to roads, because they are necessary for travel; for police purposes, to preserve the public peace, —in short, for all purposes which, in a liberal sense, can be considered public. It cannot be used, however, to take from one person his property and give it to another one more favored, and this, too, although it may incidentally benefit the community." Lancaster v. Clayton, 86 Ky. 373, 5 S.W. 864, at page 865.

See also, Henderson v. Twin Falls County, 56 Idaho 124, 50 P.2d 597, 101 A.L.R. 1151.

■ We are mindful that under art. 7, § 5, supra, the legislature has plenary power to grant such exemptions "as shall seem necessary and just." An exemption which arbitrarily prefers one private enterprise operating by means of facilities provided by a municipality, over another engaged, or desiring to engage, in the same business in the same localitiy, is neither necessary nor just. In this instance the exemption is intended to be granted by the legislature for an unconstitutional purpose, and for

**350**

that reason also is not "necessary and just." The use of the name and credit of the municipality and the tax exemption, to make the bonds salable, are the devices by which the legislature has sought to accomplish the purposes of the act. It is obvious that private enterprise, not so favored, could not compete with industries operating thereunder. If the state-favored industries were successfully managed, private enterprise would of necessity be forced out, and the state, through its municipalities, would increasingly become involved in promoting, sponsoring, regulating and controlling private business, and our free private enterprise economy would be replaced by socialism. The constitutions of both state and nation were founded upon a capitalistic private enterprise economy and were designed to protect and foster private property and private initiative. Socialism is as foreign to our constitutional, political and economic system as our private enterprise system is to the socialist system of Russia.

Moreover, the tax exemption granted to industries under the act, would result in casting an additional tax burden upon the other citizens and industries, not only of the municipalities directly participating, but of the entire state.

For all the reasons mentioned, we hold Chapter 265, Session Laws 1959, to be un-

constitutional and void. Other authorities supporting this conclusion are: School Dist. No. 8, etc. v. Twin Falls County Mut. Fire Ins. Co., 30 Idaho 400, 164 P. 1174; State ex rel. Rich v. Idaho Power Co., 81 Idaho 487, 346 P.2d 596; Lord v. City and County of Denver, 58 Colo. 1, 143 P. 284, L.R.A.1915B 306, Ann.Cas.1916C 893; Hunter v. City of Roseburg, 80 Or. 588, 156 P. 267, rehearing denied 80 Or. 605, 157 P. 1065; City of Los Angeles v. Lewis, 175 Cal. 777, 167 P. 390; Lancaster v. Clayton, 86 Ky. 373, 5 S.W. 864; State ex rel Campbell v. Cincinnati Street Ry. Co., 97 Ohio St. 283, 119 N.E. 735; Opinion to the Governor, 76 R.I. 365, 70 A.2d 817; Southern Ry. Co. v. Hartshorne, 162 Ala. 491, 50 So. 139; Carothers v. Town of Booneville, 169 Miss. 511, 153 So. 670; City of Daytona Beach v. King, 132 Fla. 273, 181 So. 1, 116 A.L.R. 880; 37 Am.Jur. Mun. Corporations, § 119, page 734; 38 Am.Jur. Mun.Corporations, § 402, page 94; Annotation 14 A.L.R. 1151; Annotation 115 A.L.R. 1456; Newland v. Child, 73 Idaho 530, 254 P.2d 1066 (public purpose).

The judgment is reversed and the cause is remanded with directions to the district court to dismiss the action.

Costs to appellant.

SMITH, KNUDSON, McQUADE and McFADDEN, JJ., concur.