Alexander B. CURCHIN, Appellant,

v.

MISSOURI INDUSTRIAL DEVELOP-
MENT BOARD, a body corporate
and politic, Respondent.

No. 68784.

Supreme Court of Missouri,
En Banc.

Jan. 8, 1987.

Rehearing Denied Feb. 17, 1987.

Kenneth J. Mallin, John R. McFarland, St. Louis, for appellant.

Richard D. Stensrud, Webb Gilmore, Ronald L. Blunt, Charles H. Stitt, Kansas City, for respondent.

WELLIVER, Judge.

Appellant, Alexander Curchin, appeals the Jasper County Circuit Court's November 3, 1986, order upholding the constitutionality of § 100.297, RSMo Supp.1985, and allowing respondent, the Missouri Industrial Development Board, to issue revenue bonds containing a clause providing a state tax credit for losses on default of the bonds.

In oral argument, many questions were raised, including, among others:

(1) the impropriety of filing the original action in Jasper County when the defendant is a state board, generally suable only in Cole County;

(2) whether, in view of our holding in *State ex inf. Ashcroft, ex rel. Plaza Prop-*

*erties v. Kansas City,* 687 S.W.2d 875 (Mo. banc 1985), the filing, purported hearing, and appeal of this case in a single day constitutes a sham proceeding to reach our original appellate jurisdiction in a single day, as was possible prior to *Plaza Properties;*

(3) whether a sham proceeding exists when the President-elect of the Chamber of Commerce, who ordinarily works to bring business to his area, here purports to hire a large St. Louis law firm to attempt to block the expansion of business in his area;

(4) whether a sham proceeding exists when the same attorneys who failed in *State ex inf. Webster, ex rel. Horstman v. Missouri Industrial Development Board,* No. 68762 (Mo. banc Oct. 29, 1986) (involving the issuance of bonds to support the *St. Louis Globe-Democrat*) now purportedly represent this client from across the state, raising the same issues that were requested to be determined in *Horstman;*

(5) whether this is, in fact, an adversarial proceeding constituting a justiciable controversy; and

(6) whether the public is being adequately represented in this proceeding.

In the Court's view, there are three classes of persons having a legitimate, vital interest in promoting the issuance and sale of industrial revenue bonds with state tax credits upon default, which are authorized by § 100.297, RSMo Supp.1985. They are persons interested in establishing new businesses, persons interested in expanding existing businesses, and persons interested in saving failing businesses. Other vitally interested persons include those considering purchase of such bonds, and, last but not least, the taxpayers of the state, who have an interest in preventing the improper disposition of tax revenues.

In our view, disposition of this case on procedural or justiciability issues would leave all those who do have a legitimate

interest in resolving the ultimate controversy hanging in midair. If § 100.297 is unconstitutional, the sooner we face up to it, the sooner the state can get on with other methods of developing its economic resources.

Despite the question of justiciability, the constitutional issues are fully briefed and argued and the rights of all interested persons appear to be adequately represented and can be protected. We conclude that the economic importance and the general public interest justify both our expedited review [1] and our determination of the case on the merits and it is in the best interests of judicial economy and of the continued economic development of our state that we finally resolve this issue. We have original appellate jurisdiction. Mo. Const. art. V, § 3. We reverse the trial court.

## I

The facts in this case are not in dispute. Respondent, the Missouri Industrial Development Board (the Board), was created as a body corporate and politic by § 100.265, RSMo Supp.1985. The Board is authorized to include in its industrial revenue bonds a provision allowing a state tax credit for the amount of any unpaid principal and accrued interest in default. §§ 100.270(2), 100.297, RSMo Supp.1985.

On June 2, 1986, the Board approved a Jasper County project concerning Missouri Specialty Castings, Inc. (Specialty) and proposed to issue $5,000,000 in revenue bonds in support thereof. On July 21, 1986, the Board approved a project concerning Kuhlman Diecasting Company, Inc. (Kuhlman) and proposed to issue up to $15,000,000 in revenue bonds in support thereof. On September 8, 1986, the Board proposed to authorize inclusion of the tax credit provision in $2.8 million of Specialty bonds and it is alleged that the Board will authorize a tax credit on some or all of the Kuhlman bonds.

1. *Curchin v. Missouri Industrial Development Board,* No. 68784 (Mo. banc order dated Nov. 10, 1986).

Appellant, Alexander Curchin, is a citizen and taxpayer of Missouri and, according to his counsel, is President or President-elect of the Joplin Chamber of Commerce.[2] On November 3, 1983, appellant filed suit as a taxpayer in the Circuit Court of Jasper County, ostensibly to obtain a declaration of the unconstitutionality of § 100.297 and of the Board's resultant lack of authority to issue revenue bonds with the tax credit feature in support of the Specialty and Kuhlman projects. Also on November 3, resondent filed its answer, the case was tried upon stipulated facts, the Jasper County Circuit Court upheld the constitutionality of § 100.297 in a written opinion, appellant's motion for a new trial was made and overruled, and appellant filed his notice of appeal to this Court, all utilizing admittedly pre-prepared instruments which now constitute the legal file.

On November 10, 1986, we sustained respondent's motion to expedite. On December 3, 1986, this Court sat in special session to hear the oral argument in the case.

## II

Appellant argues that § 100.297 constitutes a grant of public money or property and a lending of public credit in violation of the Missouri Constitution, Article III, Section 38(a),[3] which prohibits the grant of public money or property to a private person, association or corporation.[4]

Section 100.297 provides:

**Tax credit for owner of revenue bonds or notes, when, amount, limitations.—1.** The board may authorize a tax credit, as described in this section, to the owner of any revenue bonds or notes issued by the board under the provisions of sections 100.250 to 100.297, if prior to the issuance of such bonds or notes, the board determines that:

(1) The availability of such tax credit is a material inducement to the undertaking of the project in the state of Missouri and to the sale of the bonds or notes;

(2) The loan with respect to the project is adequately secured by a first deed of trust or mortgage or comparable lien, or other security satisfactory to the board.

2. Upon making the determinations specified in subsection 1 of this section, the board may declare that each owner of an issue of revenue bonds or notes shall be entitled, in lieu of any other deduction with respect to such bonds or notes, to a tax credit against any tax otherwise due by such owner under the provisions of chapter 143, RSMo, in the amount of one hundred percent of the unpaid principal of and accrued interest on such bonds or notes held by such owner in the taxable year of such owner following the taxable year of the default

---

**2.** The Missouri Specialty Castings project would be undertaken in Joplin. The Missouri Department of Economic Development anticipates that the project would directly create 150 jobs and would have a total economic impact of $18,238,-980. The project would indirectly cause eleven new retail establishments, ninety-six new non-manufacturing jobs, a population increase of 303, an influx of 153 families, and an increase in school enrollment of ninety-two.

**3.** Appellant does not raise and we do not decide the constitutionality of § 100.297 in light of the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *See generally Jones v. City of Portland,* 245 U.S. 217, 38 S.Ct. 112, 62 L.Ed. 252 (1917); *Carmichael v. Southern Coal Co.,* 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937).

**4.** **Section 38(a). Limitation on use of state funds and credit—exceptions—public calamity—blind pensions—old age assistance—aid to children—direct relief—adjusted compensation for veterans—rehabilitation—participation in federal aid.** The general assembly shall have no power to grant public money or property, or lend or authorize the lending of public credit, to any private person, association or corporation, excepting aid in public calamity, and general laws providing for pensions for the blind, for old age assistance, for aid to dependent or crippled children or the blind, for direct relief, for adjusted compensation, bonus or rehabilitation for discharged members of the armed services of the United States who were bona fide residents of this state during their service, and for the rehabilitation of other persons. Money or property may also be received from the United States and be redistributed together with public money of this state for any public purpose designated by the United States.

of the loan by the borrower with respect to the project and the final application of all amounts available from the project for the payment of such principal and accrued interest. *The tax credit allowed under this section shall be available to the original owners of the bonds or notes or any subsequent owner or owners thereof.* Notwithstanding any provision of Missouri law to the contrary, any portion of the tax credit to which any owner of a revenue bond or note is entitled under this section which exceeds the total income tax liability of such owner of a revenue bond or note *shall be carried forward and allowed as a credit against any future taxes imposed on such owner within the next ten years* under the provisions of chapter 143, RSMo. The eligibility of the owner of any revenue bond or note issued under the provisions of sections 100.250 to 100.-297 for the tax credit provided by this section shall be expressly stated on the face of each such bond or note.

3. The aggregate principal amount of revenue bonds or notes outstanding at any time with respect to which the tax credit provided in this section shall be available shall not exceed fifty million dollars.

(Emphasis added.)

Respondent argues that the tax credit authorized by § 100.297 is not a grant of public money or property or a lending of public credit since no payment is required of the state. During oral argument, the parties agreed that there are no reported cases where a court has been called upon to decide whether the allowance of a tax credit constitutes a grant of public funds. This is true, we believe, since the answer is so obvious.

The tax credit is available to the original bondholder and all subsequent bondholders. A bondholder who does not have sufficient state tax liabilities to take advantage of the credit may sell the bond to one who is able to utilize that credit. § 100.-297.2. Any unused portion of the credit may be carried forward undimished for ten years. § 100.297.2. The transferability of the bonds, the availability of the tax credit to subsequent bondholders, the issuance of the bonds to failing or risky businesses, and the ten-year carry forward provision make the utilization of the tax credit a near certainty.

■ This tax credit is as much a grant of public money or property and is as much a drain on the state's coffers as would be an outright payment by the state to the bondholder upon default. There is no difference between the state granting a tax credit and foregoing the collection of the tax and the state making an outright payment to the bondholder from revenues already collected. The tax credit authorized in § 100.297 simply shifts the risk of loss upon default from the bondholder to the state. The allowance of such a tax credit constitutes a grant of public money or property within Article III, Section 38(a) of the Missouri Constitution.

■ There is also a lending of public credit, in violation of Article III, Section 38(a). The state's tax resources are effectively pledged as the ultimate security for the bonds.

### III

Respondent next argues that, even if the tax credit constitutes a grant of public money, it is not given to a "private person, association or corporation" within the meaning of Article III, Section 38(a) of the Missouri Constitution. In examining whether the grants of public money are made to private entities, we have required that the grants serve a public purpose. *Menorah Medical Center v. Health & Educ. Facilities Auth.*, 584 S.W.2d 73, 78 (Mo. banc 1979). The constitutionality of the grant

depends on the ultimate use, purpose and object for which the fund is raised and not on the nature or character of the person or corporation whose immediate agency is to be used in applying it. A tax for a private purpose is unconstitutional though it pass through the hands of public officials; and the people may be

taxed for a public work though it is under the direction of an individual or private corporation. *State ex rel. City of St. Louis v. Siebert,* 24 S.W. 750, 751 (Mo.1894) (quoting *Sharpless v. Mayor,* 21 Pa. 147, 169 (1853)).

Respondent asserts that the tax credits are designed to promote the public purpose of general economic welfare. In determining whether there is a sufficient public purpose behind a grant of public money, Missouri has used the "primary effect" test. Under this test,

> [t]he true distinction drawn in the authorities is this: If the primary object of a public expenditure is to subserve a public municipal purpose, the expenditure is legal, notwithstanding it also involves as an incident an expense, which, standing alone, would not be lawful. *But if the primary object is not to subserve a public municipal purpose, but to promote some private end, the expense is illegal, even though it may incidentally serve some public purpose.*

*State ex rel. City of Jefferson v. Smith,* 348 Mo. 554, 154 S.W.2d 101, 102 (banc 1941) (emphasis added).

In deciding the primary effect of the tax credit, the stated purpose of the legislature, as pronounced in § 100.275.7, RSMo Supp.1985, is not dispositive. Rather, we must make the determination based upon the history and purpose of Article III, Section 38(a) of the Missouri Constitution and upon cases in which we have applied that constitutional provision.[5]

> In connection with [Article III, Section 38(a) of the Missouri Constitution], it might be well to recall very, very briefly the origin of [this] section[ ]. Along in 1820 and '30 and '40[,] it was the custom of the state to give large sums of money to railroads, canals, banks and so forth and the custom became so abused that nearly all the state constitutions wrote

such sections as this in their fundamental law

11 *Debates of the Missouri Constitution 1945* 3215 (debate of May 23, 1944) (statement of Mr. Garten).

Article IV, Section 46 of the Missouri Constitution of 1875, the predecessor to Article III, Section 38(a) of the Missouri Constitution of 1945, was adopted to prevent railroad grants. The provision was adopted despite the significant public benefit provided by the railroads.

Accordingly, in our application of Article III, Section 38(a) of the Missouri Constitution, we have held grants with a primarily private effect to be unconstitutional, despite the possible beneficial impact upon the economy of the locality and of the state. In *State ex rel. City of Jefferson v. Smith,* 348 Mo. 554, 154 S.W.2d 101 (banc 1941), we held the issuance of municipal bonds to finance the construction of an office building to be occupied by both public and private concerns to be unconstitutional, despite the beneficial impact the construction would have had on Jefferson City and on the state.

Missouri has demonstrated its encouragement of the growth and revitalization of its industries by upholding the constitutionality of industrial revenue bonds not incorporating the tax credit. *Menorah Medical Center v. Health and Educ. Facilities Auth.,* 584 S.W.2d 73 (Mo. banc 1979); *State ex rel. Jardon v. Industrial Dev. Auth. of Jasper County,* 570 S.W.2d 666 (Mo. banc 1978); *State ex rel. Atkinson v. Planned Indus. Expansion Auth. of St. Louis,* 517 S.W.2d 36 (Mo. banc 1975). Some states have held the issuance of industrial revenue bonds to be unconstitutional.[6] No state has upheld the constitutionality of industrial revenue bonds which provide for state tax credits upon default.

■ Section 100.297 allows the Board to choose the companies which it will support

---

**5.** For an informative historical overview, *see* Comment, *Missouri's Changing Public Purpose Doctrine,* 16 St. Louis U.L.J. 658 (1972).

**6.** *See McClelland v. Mayor of Wilmington,* 39 Del.Ch. 114, 159 A.2d 596 (1960); *Village of Moyie Springs v. Aurora Mfg. Co.,* 82 Idaho 337, 353 P.2d 767 (1960). *State ex rel. Beck v. City of York,* 164 Neb. 223, 82 N.W.2d 269 (1957).

with the tax credit. Providing the tax credits to only a select few companies lends itself to abuse and is analogous to the railroad grants of yesteryear, which prompted the adoption of Article III, Section 38(a) of the Missouri Constitution.

While it is possible that the projects to be supported by the tax credit-bearing revenue bonds could have a beneficial impact on the economy of the state, the grant of public money to these businesses' bondholders is unconstitutional just as railroad grants were.

"We may think that we are getting something for nothing, but there is always a payday. We have to pay for it in the long run, and I am also trying to preserve the rights of the state, the freedom of the people. If we want to sell our liberties for a little free money and then be put under government control, it won't be long until we are slaves." 11 *Debates of the Missouri Constitution 1945* 3209 (debates of May 23, 1944) (statement of Mr. Opie).

We hold the authorization of the tax credits under § 100.297 to be unconstitutional in violation of Article III, Section 38(a) of the Missouri Constitution. We need not address appellant's other constitutional challenges to the statute.

We reverse the judgment of the circuit court.

HIGGINS, C.J., BILLINGS, BLACKMAR, DONNELLY, JJ., and FLANIGAN, Special Judge, concur.

RENDLEN, J., dissents in separate opinion filed.

ROBERTSON, J., not sitting.

RENDLEN, Judge, dissenting.

Before today this Court has held that "improved employment and stimulation of the economy serve essential public purposes." *State ex rel. Jardon v. Industrial Dev. Auth.*, 570 S.W.2d 666, 675 (Mo. banc 1978). The majority now turns its back to *Jardon* and unnecessarily deprives Missouri of an effective tool for economic growth. The Missouri Industrial Development

Board's authority to issue revenue bonds and the allowance of tax credit under § 100.297, RSMo Supp.1985, is constitutionally sound notwithstanding the majority's myopic reading of Mo. Const. art. III, § 38(a). Unfortunately this new and overly restrictive reading of the constitution comes at a time when the need for cooperation between government and private industry was never more acute. It deprives Missouri of an important tool to forge new economic growth and the expansion of existing industries. Missouri needs jobs for its people. The farming areas of our State struggle to create work for families that the farms alone can no longer support and our State is locked in an escalating competition to attract new industries. But sadly the majority today, misunderstanding the legislative plan, carefully fashioned to accomplish these legitimate ends, scorns the concept of improved employment as an essential public purpose.

Although the legislature generally may not "grant public money or property, or lend or authorize the lending of public credit, to any private person, association or corporation," Mo. Const. art. III, § 38(a), by virtue of the "public purpose doctrine" we consistently have held that such prohibition is not violated where the grant or loan is for a public purpose, *e.g.*, *State ex rel. Wagner v. St. Louis County Port Auth.*, 604 S.W.2d 592, 602 (Mo. banc 1980); *Menorah Medical Center v. Health & Educ. Facilities Auth.*, 584 S.W.2d 73, 78 (Mo. banc 1979); *Americans United v. Rogers*, 538 S.W.2d 711, 719 (Mo. banc), *cert. denied*, 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 632 (1976), because "[t]he presence of a legitimate 'public purpose' makes society or the people of this state the direct beneficiary of the expenditures." *Id.*

It has long been established that "[t]he state constitution, unlike the federal constitution, is not a grant of power, but as to legislative power, it is only a limitation; and, therefore, except for the restrictions imposed by the state constitution, the power of the state legislature is unlimited and practically absolute." *State ex rel. Farm-*

ers' Elec. Coop. v. State Envtl. Improvement Auth., 518 S.W.2d 68, 72 (Mo. banc 1975). The burden is on appellant to demonstrate that the challenged legislative enactment is unconstitutional. *Menorah Medical Center*, 584 S.W.2d at 77. "An act of the legislature is presumed to be valid and will not be declared unconstitutional unless it clearly and undoubtedly contravenes some constitutional provision," and "[l]egislative enactments should be recognized and enforced by the courts as embodying the will of the people unless they are plainly and palpably a violation of the fundamental law of the constitution." *Americans United*, 538 S.W.2d at 716. It is only in the context of these well-settled principles that the tax credit authorized by § 100.297 can be measured against Mo. Const. art. III, § 38(a).

For reasons hereafter discussed, it will be seen that the provisions of § 100.297 do not constitute the granting of public money or the lending of public credit as those phrases appear in their constitutional context. However, assuming arguendo that the challenged tax credit constitutes a granting of public money or a lending of public credit, it is not violative of the Missouri constitution because it is for a public purpose in that, as we have "reiterated through the years," it is "for the support of the government or *for some of the recognized objects of government, or directly to promote the welfare of the community,"* State ex rel. Wagner, 604 S.W.2d at 597 (emphasis added), and under the "primary *purpose*" test, "if the primary purpose of a statute is public 'the fact that special benefits may accrue to some private persons does not deprive the government action of its public character, such benefits being incidental to the primary public purpose.' " *Id.* (quoting *State ex rel. Atkinson v. Planned Indus. Expansion Auth.*, 517 S.W.2d 36, 45 (Mo. banc 1975)).

The Industrial Development Funding Act, §§ 100.250–.297, RSMo Supp.1985, authorizes respondent to issue revenue bonds for the purpose of financing commercial, industrial, agricultural, manufacturing, pollution control, waste control, research and development, and export trade facilities. Sections 100.255(9), .275.1, RSMo Supp. 1985. We repeatedly have held that public financing for such projects serves a legitimate public purpose. *E.g.*, *State ex rel. Wagner*, 604 S.W.2d at 596–98, 602; *State ex rel. Jardon*, 570 S.W.2d at 675–76; *State ex rel. Farmers' Elec. Coop.*, 518 S.W.2d at 74–75; *State ex rel. Atkinson*, 517 S.W.2d at 45. Stimulation of the economy is an essential public purpose because "[t]he continued existence of an established industry and the establishment of new industry provide jobs, measurably increase the resources of the community, promote the economy of the state, and thereby contribute to the welfare of its people." *Mitchell v. North Carolina Indus. Dev. Fin. Auth.*, 273 N.C. 137, 159 S.E.2d 745, 752 (1968), *quoted in State ex rel. Jardon*, 570 S.W.2d at 675.

As respondent submits, the tax credit authorized by § 100.297 is an integral part of the program for economic development contemplated by the Act, and it is subject to the protection of the Missouri Industrial Development Board's careful scrutiny. Respondent may grant a loan request to carry out a project only if it determines that the project will benefit the economy of the state. Section 100.281.1(1), RSMo Supp. 1985. Moreover, respondent may authorize the challenged tax credit only if it first determines that *"[t]he availability of such tax credit is a material inducement to the undertaking of the project in the state of Missouri and to the sale of the bonds or notes."* Section 100.297.1(1) (emphasis added). It makes little sense to hold, as the principal opinion essentially does, that issuance of the revenue bonds serves a public purpose, but that offering a material inducement for the sale of the bonds does not. By the very terms of § 100.297.1(1), the tax credit will be authorized only where such will serve a public purpose. "The public purpose being apparent, it is unimportant that incidental benefits may accrue to private interests." *State ex rel. Farmers' Elec. Coop.*, 518 S.W.2d at 74.

The legislature expressly provides in § 100.275.7 that "[n]othing contained in sections 100.250 to 100.297 shall be deemed to constitute a use of state funds or credit in violation of the provisions of article III, sections 37, 38(a) and 39 of the Missouri Constitution." The "determination of what constitutes a public purpose is primarily for the legislative department and it will not be overturned unless found to be arbitrary and unreasonable." *State ex rel. Farmers' Elec. Coop.*, 518 S.W.2d at 74. Appellant dismally fails in his attempt to make such a showing here. As we stated in *Menorah Medical Center*, 584 S.W.2d at 79, "Debates on Article III, § 38, at the 1945 Constitutional Convention, indicate the belief that Missouri's constitution should be flexible and progressive enough to allow state public funds to be committed to new needs and purposes. See Eleven Debates of Missouri Constitution, 1945, pp. 3208–3212." "The consensus of modern legislative and judicial thinking is to broaden the scope of activities which may be classified as involving public purpose." *Menorah Medical Center*, 584 S.W.2d at 79; *see also State ex rel. Jardon*, 570 S.W.2d at 675. Like this Court in *Americans United*, 538 S.W.2d at 719, but unlike today's majority, I am not inclined to drive the legislature back into the nineteenth century. Approval of issuance of the revenue bonds by respondent serves the legitimate public purpose of stimulating the economy; authorization of the tax credit, where the availability of such tax credit is specifically determined to be a material inducement to the undertaking of the project in the state of Missouri and to the sale of the bonds or notes, serves a similar public purpose. Therefore the tax credit authorized by § 100.297 does not violate Mo. Const. art. III, § 38(a).

In sum, the tax credit provision of § 100.297 does not violate Mo. Const. art. III, § 38(a) because it is for a public purpose; furthermore it is not invalid because the tax credit provision does not constitute the "lending of public credit" or the "grant[ing of] public money" as those phrases are employed in the constitution. Such would occur when the state guarantees repayment of a loan and stands liable as a guarantor in the event of default, but that is not the case here.

There are many provisions in the current tax code allowing an individual taxpayer to decrease his income tax liability if he suffers business, loan or investment losses. *E.g.*, 26 U.S.C. §§ 165, 166, 611 (1982 & Supp.III 1985). In large part the deductions provided by the Internal Revenue Code are also allowable for the benefit of Missouri residents to decrease their state income tax liability. Section 143.141, RSMo Cum.Supp.1984. Under 26 U.S.C. § 166, for example, a taxpayer essentially may deduct from his adjusted gross income any business debt which becomes worthless within the taxable year. The great similarities between this "deduction" and the challenged tax "credit" in the case sub judice may be illustrated graphically:

| Bad debt deduction 26 U.S.C. § 166; § 143.141, RSMo | Section 100.297 tax credit |
|---|---|
| (1) Entrepreneur begins or expands business. | (1) Entrepreneur begins or expands business. |
| (2) Entrepreneur solicits prospective creditor to borrow $1,000. Entrepreneur faces no restrictions as to whether creditor will be able to deduct his loss incurred through default. | (2) Entrepreneur contacts Missouri Industrial Development Board seeking issuance of revenue bonds in the amount of $1,000. Entrepreneur faces significant restrictions as to whether buyer of bonds may credit his loss in the event of default. The Board first determines if the project will benefit the economy of the state and if availability of the tax credit would be a material inducement to the undertaking of the project and the sale of the bonds or notes. |
| (3) Creditor lends entrepreneur $1,000 and takes interest bearing promissory note as evidence of debt. | (3) Missouri Industrial Development Board issues revenue bonds obligating the entrepreneur for which buyer lends or pays $1,000. |
| (4) Creditor's promissory note is negotiable and can be sold in the market place to any purchaser. | (4) Revenue bonds are negotiable and can be sold in the market place to any purchaser. |
| (5) Entrepreneur defaults and creditor suffers bad debt loss. | (5) Entrepreneur defaults and buyer suffers a loss on bonds. |
| (6) State of Missouri does not guarantee payment of the $1,000. | (6) State of Missouri does not guarantee payment of the $1,000. |
| (7) State of Missouri does not grant public money or lend its credit to the entrepreneur or to the holder of the note. | (7) State of Missouri does not grant public money or lend its credit to the entrepreneur or to the buyer. |
| (8) Creditor or any subsequent purchaser of the note, if he (a) has earnings in the years thereafter and (b) incurs state income tax liability, may claim the bad debt as a deduction for state income tax purposes. | (8) Buyer or any subsequent purchaser of the bond, if he (a) has earnings in the years thereafter and (b) incurs state income tax liability, may claim his loss as a credit for state income tax purposes. |
| (9) Creditor (if in 50% tax bracket) may reduce his state income tax liability by $500. | (9) Buyer may reduce his state income tax liability by $1,000. |

From this illustration, a creditor who incurs the *bad debt loss* will be able to reduce his taxes by $500 while the buyer of revenue bonds who incurs a loss through default will be able to reduce his taxes by $1,000. In either case the noteholder (creditor) or the bondholder (creditor) knows he has a potential tax savings if his debtor defaults. But each knows the state does not guarantee payment, "grant public money" nor "lend its credit" to the transaction. Though in one instance the potential tax savings is $1,000 and in the other it is $500, such numerical difference has no constitutional significance. The point remains that if, as the majority holds today, the challenged tax credit is a "granting of public money" or a "lending of public credit," and thus invalid, so the bad debt deduction allowable until this date under 26 U.S.C. § 166 and § 143.141, RSMo Cum.Supp. 1984, is necessarily invalid. However neither appellant nor the majority advance the proposition that the "bad debt" and similar allowable deductions constitute prohibited "granting of public money" or "lending of public credit," yet to strike down the challenged credit necessarily threatens invalidation of the bad debt deduction and similar provisions of the tax code including the mineral depletion allowance, 26 U.S.C. § 611, and the deduction for worthless securities, 26 U.S.C. § 165(g). The result reached by the majority was neither intended nor envisioned by the drafters of our constitution and today's constitutional "interpretation" plays havoc with a substantial portion of Missouri's income tax system.

Finally, the tax credit does not violate other constitutional provisions raised by appellant. At least for the same reason that it does not violate Mo. Const. art. III, § 38(a), *i.e.*, because it serves a legitimate public purpose, the tax credit cannot be said to violate Mo. Const. art. III, § 39(1) and (2), or Mo. Const. art. X, § 3. Furthermore, although § 100.297 authorizes respondent to determine when the tax credit is available, such does not constitute an unlawful delegation of legislative authority in violation of Mo. Const. art. II, § 1, since the legislature in § 100.297.1 has set forth the findings required by respondent before the tax credit may be authorized. *See, e.g., State v. Cushman,* 451 S.W.2d 17, 20–21 (Mo.1970); *State ex rel. Field v. Smith,* 329 Mo. 1019, 49 S.W.2d 74, 76 (1932). Additionally, the tax credit authorized by § 100.297 is not the contracting of or the authorizing of the contracting of any *liability* of the state, and therefore does not violate Mo. Const. art. III, § 37. *See, e.g., Board of Pub. Bldgs. v. Crowe,* 363 S.W.2d 598, 605 (Mo. banc 1962). Section 100.297 is not a "local or special law" violative of Mo. Const. art. III, § 40(28) because a law is not special if it applies alike to all of a given class and the classification is made upon a reasonable basis. *See, e.g., Century 21—Mabel O. Pettus, Inc. v. City of Jennings,* 700 S.W.2d 809, 810–11 (Mo. banc 1985); *State ex rel. Pub. Defender Comm'n v. County Court of Greene County,* 667 S.W.2d 409, 412 (Mo. banc 1984). Lastly, § 100.297 does not violate Mo. Const. art. X, §§ 16–24 because the authorized tax credit does not constitute an *expense* incurred by state government. Mo. Const. art. X, § 20.

The principal opinion essentially holds that while issuance of revenue bonds serves a legitimate public purpose, authorization of tax credits which materially induce the sale of those bonds does not. I find this distinction untenable and would affirm the circuit court's judgment.